*No. 4.*

### LEWIS *against* HOLLY ET AL.   *Addison*, 1820.

A. is indebted to B. on a negotiable note, B. is indebted to C. in a larger amount, and proposes to secure C. by mortgage of land, on which D. has a prior mortgage. B. and C apply to A. who promises to pay the amount, due on his note, in favor of B. to D. on his mortgage ; whereupon, C. gives farther time to B. and accepts the security proposed ; afterwards, B endorses the note to E. bona fide, E having no notice of the agreement between A., B., and C. A. does not pay to D. until after the note falls due, and after notice from E.

Held, that the *liability* to C. so long as it continued, is a good defence, against a suit, on the note, in favor of either B. or E.

THIS was an action, on a negotiable note, executed by the defendants, to one Spalding Russell, and by him endorsed to plaintiff.

On the trial, at July term, 1819, the defendant offered to give, in evidence, the testimony of Mr. Seymour, as follows :

"Some time in the month of July, or August, 1816, Mr. Haight called on me, with a demand, in favor of Thomas Skelding & Co. of Troy, against Spaulding Russell, of Shoreham, amounting to 2100, or 2200 dollars, and wished me to assist in securing the debt ; I went, with said Haight, to Shoreham, and called on said Russell, (who then had a store of goods, in Shoreham, and personal property, on which Skelding & Co. could have secured their demand,) and requested security, and informed him, if it was not given, we should secure the debt, by attachment. Russell informed us, he would secure the

debt, by mortgage of his farm, which was then encumbered, with a mortgage, to Samuel Hunt, on which was due, about seven hundred dollars, but, that he had made provision for the payment of that mortgage, by way of Samuel H. Holley, against whom, and his brother, John D. Holly, he held notes to that amount, and that Holly was to pay the money over to Hunt, in discharge of that mortgage: We agreed to take security, on that farm, provided Holly would agree to pay the Hunt mortgage; we accordingly went, with Russell, to see Holly; we found him riding away, the subject was named to him, he said that Russell held a note against him, and that there would be five, or six, hundred dollars due Russell, but there was an account between him and Russell, on which something was due to him, which must be deducted from those notes, that he could not then stay to adjust it; Russell wished Holly to engage to pay to Hunt, on his mortgage, the amount due on his notes, so that he could make to Skelding & Co. security on that farm, and agreed that, *that* should be considered payment to him on the notes; Holly engaged that he would pay to Hunt, except the balance that might be deducted. It was then agreed that Holly should pay to Hunt, to be applied in discharge of Hunt's mortgage, (reserving the balance that might be due on settlement,) the amount of notes Russel held against him; and upon Holly's promising that the balance to be deducted should not reduce the note more than a certain sum, I think forty dollars, and promising to pay the remainder to Hunt on Hunt's mortgage; Skelding & Co. agreed to take a mortgage of the farm, from Russell, and give him time of payment, and accordingly did take the mortgage; Holly paid to Hunt $580,50, being the amount due on the note Russell held against him; he borrowed the money of Skelding & Co. to enable him to do this, and gave Skelding & Co. his receipt for the same. Hunt sued his mortgage, and took a decree, for the balance due, after deducting what Holly had paid him. Skelding & Co. paid the sum, contained in the decree, to the Clerk of the Court, and foreclosed his mortgage, against Russell, on which was due,

1st January, 1818, $2353,76, and sold the farm for $2000. Notice was given, by Lewis, to Holly, March 29, 1817, and before payment, by Holly, to Hunt."

This evidence was objected to, by the plaintiff, and admitted by the Judge.

Verdict for defendant, and motion for new trial, founded on exceptions to the opinion of the Judge.

In support of the motion, it was contended : That the agreement was to pay the *note*, and implies that the note was to be delivered to Skelding & Co. and to be paid to them, in case they held the note ; the promise did not attach to them, unless they procured the note ; as a promise to accept a bill of exchange, is not binding, unless a bill be actually drawn and presented ; the moment Holly found that neither Skelding & Co. or Hunt, held the note, he was exonerated from the agreement, and stood accountable to any bona fide holder of the note.

2. As the agreement was, to pay the *note*, if it was not paid, when it fell due, the agreement was at an end.

3. Skelding & Co. leaving the note, in the possession of Russell, was a gross fraud upon innocent endorsees.

*Contra.* That the plaintiff received the note from Russell, subject to all equitable defences, existing at the time of the transfer, as against Russell. In this State, an endorsee takes every note, upon the credit of the endorser, and upon his alone.

2. The contract, given in evidence, as made between Holly, the defendant, Russell, and Skelding & Co. was a valid contract, in law, binding upon Russell and the defendant, and is therefore a good defence to the action. It is binding upon Russell, for the creditors, Skelding & Co. forbearing to sue, and giving time to Russell, upon the security offered, was a sufficient consideration to support his undertaking ; it was binding upon the defendant, for the same reason. If Holly was bound, by his undertaking, to Skelding Co. it constituted a valid defence, against Russell, before the endorsement of the note, in question, and, of course, against Lewis, afterwards.

3. It is contended, that possession of the note, by Russell,

after the agreement, in question, was fraudulent, as against Lewis ; we answer, this was not a general assignment, but the property and interest, in the note, remained in Russell, subject to the contract ; this possession affords no presumption, that there was no off-sett, nor that the payee has not drawn on the maker, for the amount, nor that there has been no agreement, subsequent to the date of the note, as to the mode of payment ; there was no person to whom Russell could deliver the note ; Skelding & Co. were not to receive the money, and Hunt had no interest in the note or agreement.

Opinion of the Court.  1. The agreement between Holly, Russell, and Skelding & Co. was not predicated upon any supposed transfer of the note, but upon a distinct consideration ; by this contract, Holly agreed to pay a certain sum, he owed to Russell, on this note, to Hunt, to apply on his mortgage, and by this agreement of Holly, Skelding & Co. were induced to give further time of payment, and accept security, which they otherwise would not have accepted ; the promise was for their benefit.

2. This contract could not be discharged, without the consent of Skelding & Co. or actual payment to Hunt, on his mortgage, either by Russell, or defendant ; non-payment, according to the terms of the note, could not put an end to the agreement, or discharge Holly from his liability to Skelding & Co.

3. While this liability, to Skelding & Co. existed, no action could be maintained, on the note, by Russell ; and, as this *liability*, alone, constituted a good defence, against Russell, it would, also, against an endorsee.

4. The possession of the note, by Russell, could not, in this case, be considered a fraud, in Skelding & Co. upon endorsees, the sum due on the note was not ascertained, and the money was not to be paid to Skelding & Co.

*Judgment*—For defendants.

See Discharge 1, 2, 3. Evidence 4, 14. Ex. and Ad. 10. Notice 2. Town Treasurer. Patent Right. Pledge. Trustee Action.

---

PROPRIETORS—See Division 3. New Trial 6.